UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

_____
INES McGILLIVRAY,                        )
       **Plaintiff**                              )
                                         )
       V.                                     )     CIVIL ACTION NO.          )     05-11826-MLW
CIGNA GROUP INSURANCE and                )
LIFE INSURANCE COMPANY                   )
OF NORTH AMERICA,                        )
       **Defendants**                            )
_____)

**PLAINTIFF'S MOTION FOR JUDGMENT ON THE RECORD**

    Now comes the Plaintiff and moves the the Court enter Judgment reversing the Defendant's denial of benefits to the Plaintiff. In support thereof, Plaintiff states:

1. The Defendant's denial of benefits was arbitrary and capricious;

2. The Defendant's denial of benefits was unsupported by evidence;

3. The Defendant's denial of benefits was improperly motivated and the result of a conflict of interest;

    The Plaintiff further refers to the brief filed herewith.

WHEREFORE, Plaintiff respectfully requests that the Court enter an Order Judgment reversing the Defendant's denial of benefits to the Plaintiff .

                                            Plaintiff,

                                            By her attorney,

                                            /s/Paul R. Chomko
                                            Paul R. Chomko, Esq.
BBO No. 637716
ALFORD & BERTRAND, LLC
60 Arsenal Street
Post Office Box 322
Watertown, MA  02471-0322
(617) 926-8800

CERTIFICATE OF SERVICE

      I, Paul Chomko, Esquire, certify that a copy of the foregoing has been served upon Defendant listed below by ECF, postage prepaid, this 15th day of December, 2006.

David B. Crevier, Esq.
Katherine R. Parsons, Esq.
Crevier & Ryan, LLP
1500 Main Street, Suite 2020
Springfield, MA 01115-5727

                                      ____/s/ Paul Chomko_____
                                      PAUL CHOMKO, ESQUIRE

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

_____
INES McGILLIVRAY,                          )
              **Plaintiff**             )
                                           )
              V.                        )   **CIVIL ACTION NO.**
                                           )   **05-11826-MLW**
**CIGNA GROUP INSURANCE** and              )
**LIFE INSURANCE COMPANY**                 )
**OF NORTH AMERICA,**                      )
             **Defendants**            )
_____)

**BRIEF IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR JUDGMENT ON THE RECORD**

**STATEMENT OF FACTS**

      The Plaintiff, Ines McGillivray, was married to Paul McGillivray. On January 15, 2004, Paul McGillivray lost his life as the result of a motor vehicle which occurred that day. A copy of the Motor Vehicle Crash Police Report is included within the record (Ex.7, p.55) According to the Certificate of Death, Paul McGillivray died as the result of "multiple injuries due to blunt trauma." The Certificate of Death lists the manner of death as accidental.(Ex.6, p.52) The Plaintiff filed a claim for her husband's death pursuant to a policy provided through her employer   Partner's Health Care Systems, Inc. where she was employed as a staff nurse.(Ex.2, p.24)

      The policy upon which the Plaintiff pursues a claim for the death of her husband Paul McGillivray is identified as Policy No. OK 826557 , Life Insurance Company of North America Group Accident Policy, issued and underwritten by the Defendant LINA to Partner's Health Care Systems, Inc. (Ex.1, p.1) The coverage under this policy for the death of a spouse is $100,000.00 (Ex.1, p.10; Ex.2, p.24)

**Relevant Policy Provisions**

      In this policy, LINA agrees to insure those persons eligible, and agree to pay benefits:

"for loss from bodily injuries:
a)    caused by an accident which happens while an insured is covered by this policy; and
b)    which, directly and from no other causes, result in a covered loss
(See the Description of        Coverage.)

We will not pay benefits if the loss was caused by:

a)    sickness, disease, or bodily infirmity; or
b)    any of the Exclusions listed in the policy." (Ex.1, p.1)

The Exclusions are set forth within the Policy at page 3 of the Policy entitled "Exclusions". (Ex.1, p.3) The only exclusion referred to or relied upon by LINA in its denial of coverage is exclusion no.1 which states:

"No benefits will be paid for loss resulting from:
1.    intentionally self-inflicted injuries . . ." (Ex.1, p.3)

The policy contains no exclusion related to alcohol or intoxication (Ex.1, p.3) The Policy does not contain a definition of "accident" or "intentionally self-inflicted injuries" in its "Definitions" section (Ex.1, p.3)

### Plan Interpretation Provision

The Policy places the authority with the Insurance Company to interpret the Plan documents, to decide questions of eligibility for coverage, and to make related findings of fact (Ex.1, p.4). According to the Policy, all decisions made by the Insurance Company in this capacity are binding to the fullest extent of the law (Id.)

### LINA'S Basis for Denial

LINA based its denial of coverage for Mr. McGillivray's death on the theory that, because Mr. McGillivray was intoxicated at the time of the automobile crash that took his life, his death was not accidental (Ex.25, p.127). Specifically, LINA states in the final denial letter:

"This policy pays benefits only for loss which is the result of an accident. The perils of drinking and driving have been widely publicized and are well known. It is clearly foreseeable that drinking and driving can cause death or bodily harm, to a much greater degree than the act of driving while not

intoxicated. This policy specifically excludes benefit payment for a loss which is the result of an insured's self inflicted injuries. It pays only benefits for a loss which is the result of an accident, which is defined as a sudden unforeseen external event. Mr. McGillivray's death was not accidental in nature, as his death resulted from drinking and driving, which was the foreseeable result of his self inflicted, voluntary actions, and thus no benefits are payable under policy OK 826557." (Ex.25, p.127).

LINA cites no other reason for the denial of benefits in any of its letters of review and determination (Ex.15-25).

## ARGUMENT SECTION

**1. Standard of Review**

In ERISA cases, the Supreme Court has held that *when a plan administrator* exercises discretion in determining eligibility for benefits, then the plan administrator's decision will be reversed only if it is found by the court to be arbitrary and capricious. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). However, in the present case, the discretion in determining eligibility for benefits is not placed with the Plan Administrator, but with the Insurance Company itself. (Ex.1, p.4). This raises the possibility of a conflict of interest, and therefore the arbitrary and capricious standard should not be applied wholesale. Additionally, the Policy specifically states that all fiduciary duty relating to interpretation of the Plan rests with the Insurance Company itself.

"Although it is a comprehensive and reticulated statute, ERISA does not set out the appropriate standard of review for actions . . . challenging benefit eligibility determinations. To fill this gap, federal courts have adopted the arbitrary and capricious standard developed under 61 Stat. 157, 29 U.S.C. 186(c), a provision of the Labor Management Relations Act, 1947 (LMRA). In light of Congress' general intent to incorporate much of LMRA fiduciary law into ERISA, and because ERISA, like the LMRA, imposes a duty of loyalty on fiduciaries and plan administrators. . . . A comparison of the LMRA and ERISA, however, shows that the *wholesale* importation of the arbitrary and capricious standard into ERISA is unwarranted."Firestone Tire and

Rubber Co. v. Bruch, 489 U.S. 101, 110 (1989)(citations omitted).

As a preliminary matter the Court must establish the proper standard of review for plaintiffs' ERISA claims. As plan beneficiaries, plaintiffs have the right to federal court review of benefit denials and terminations under ERISA. "ERISA was enacted to promote the interests of employees and their beneficiaries in employee benefit plans." Firestone Tire & Rubber Co, 489 U.S. 101 at 113 .

"...[T]he validity of a claim to benefits under an ERISA plan is likely to turn on the interpretation of terms in the plan at issue. Consistent with established principles of trust law, we hold that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. . . . Of course, if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a "facto[r] in determining whether there is an abuse of discretion." Firestone Tire & Rubber Co, 489 U.S. 101 at 115.

If, by its terms, "the ERISA plan grants the plan administrator discretionary authority in the determination of eligibility for benefits, the administrator's decision must be upheld unless it is arbitrary, capricious, or an abuse of discretion." Wright v. R.R. Donnelly & Sons Co. Group Benefits Plan, 402 F.3d 67, 74 (1st Cir. 2005) (quotation marks omitted). The arbitrary and capricious standard asks only whether a factfinder's decision is plausible in light of the record as a whole or, put another way, whether the decision is supported by substantial evidence in the record " Leahy v. Raytheon Co., 315 F.3d 11, 17 1st Cir 2002)

In applying the arbitrary and capricious standard, "the existence of conflict of interest on the part of the administrator is a factor which must be considered." Id. (citing Firestone Tire & Rubber, 489 U.S. at 115). In the First Circuit, "if a court concludes there is improper motivation amounting to a conflict of interest, the court may cede a diminished degree of deference — or no deference at all — to the administrator's determinations." Id. (quotation marks omitted).

Under the law of the First Circuit, "the fact that the plan administrator will have to

pay the plaintiff's claim out of its own assets does not change the arbitrary and capricious standard of review." Wright, 402 F.3d at 75 (citation omitted). The First Circuit has acknowledged that it is questionable whether an ERISA plan administrator that has a financial stake in the benefit decisions can truly act as a disinterested trustee. Wright, 402 F.3d at 75. Nonetheless, the First Circuit has declared that it is "well-established precedent" not to apply a less deferential standard solely because the plan administrator has a financial stake in the benefit decisions it makes. Id.; . Arbitrary and capricious review "with bite," however, may apply where plan participants show that an adverse determination was "improperly motivated." Fenton v. John Hancock Mut. Life Ins. Co., 400 F.3d 83, 90 (1st Cir. 2005) (citation omitted). The burden is on the claimant to demonstrate a conflict of interest. Wright, 402 F.3d at 74 n. 4.

**2. LINA'S Denial of Benefits was Improperly Motivated and a Conflict of Interest Exists**

In the present case, there is additional evidence of a conflict of interest, and that the adverse determination was "improperly motivated" beyond the fact that the plan administrator had a financial stake in the benefit decisions.

LINA determined that the decedent Paul McGillivray did not die from an accident. However, this determination was made without any inquiry into the decedent's subjective state of mind. During the claim review process, the Plaintiff provided information to LINA regarding the fact that the decedent had, just prior to the accident, voluntarily placed himself with the Addiction Recovery Program at the Faulkner Hospital under the care of Dr.Garner(Ex.5, p.47; Ex.22, pp.107-124).  Dr. Garner met with the deceased in connection with the Addiction Recovery Program on the two days prior to the accident in question.(Id.)  The Plaintiff informed LINA that she felt this treatment and the related medications may have played a part in the accident (Ex.5, p.47; Ex.16,p.96) LINA never reviewed the records of this treatment or spoke with Dr. Garner (Ex.25, p.127 'list of information reviewed') Under First Circuit law, subjective belief of the decedent is the first step of analysis.

"If the fact-finder determines that the insured did not expect an injury similar in

type or kind to that suffered, the fact-finder must then examine whether the suppositions which underlay that expectation were reasonable. Wickman v.Northeastern Nat. Ins. Co., 908 F.2d 1077, 1088 (1st Cir. 1990) This analysis will prevent unrealistic expectations from undermining the purpose of accident insurance. If the fact-finder determines that the suppositions were unreasonable, then the injuries shall be deemed not accidental. The determination of what suppositions are unreasonable should be made from the perspective of the insured, allowing the insured a great deal of latitude and taking into account the insured's personal characteristics and experiences. Id *citing* Ward v. Penn Mutual Life Ins. Co., 352 S.W.2d 413, 423 (Mo.Ct.App. 1961) (finding accident where man fell off top of moving car; he had performed the stunt previously, knew, and trusted the driver, was strong, and had a good grip); Oldring v. Metropolitan Life Ins. Co., 492 F. Supp. 994 (D.N.J. 1980) (finding an accident where owner experienced in use of gun, after having examined the gun and thinking it was empty, pointed and fired the gun at his head, killing himself); Knight v. Metropolitan Life Ins. Co.(finding accidental the death of professional diver after diving off the Coolidge Dam; he previously had completed the same dive without injury).

    In this case, LINA made absolutely no attempt to take into account the insured's expectations, personal characteristics, or experiences. To the contrary, LINA specifically was aware of the fact that the decedent had a long history of alcoholism and driving under the influence of alcohol, including arrests, the most recent being just 13 hours prior to the fatal crash (Ex.15, p.92; Ex.16, p.96). LINA obtained no evidence that any of these incidents resulted in injury of any type to the decedent despite his long history of alcoholism.

    "If the fact-finder, in attempting to ascertain the insured's actual expectation, finds the evidence insufficient to accurately determine the insured's subjective expectation, the fact-finder should then engage in an objective analysis of the insured's expectations.  In this analysis, one must ask whether a reasonable person, with background and characteristics similar to the insured, would have viewed the injury as highly likely to occur as a result of the insured's intentional conduct. An objective analysis, when the background and characteristics of the insured are taken into account, serves as a good proxy for actual expectation. Requiring an analysis from the perspective of the reasonable

person in the shoes of the insured fulfills the axiom that accident should be judged from the perspective of the insured. Wickman v.Northeastern Nat. Ins. Co., 908 F.2d 1077, 1088 (1st Cir. 1990)(citations omitted)

Further evidence of the improper motivation of LINA in denying benefits is found in the misuse of, or ignorance of, statistics regarding deaths involving drunk driving. Courts following the *Wickman* analysis have gone into great detail in stating that, contrary to LINA's contention, it is highly unlikely, and therefore unexpected, that driving under the influence of alcohol will lead to death.

One such analysis from the Sixth Circuit, applying Wickman, finds that [the plan administrator] acted arbitrarily and capriciously in denying Plaintiff's request for benefits by determining that decedent's death was not accidental. Lennon v. Metropolitan Life Insurance Co. Case No. 05-73450 (E.D.Mich. 2006)[1] The relevant portions of the decision are set forth below.

> "Statistics actually show that a person "is far more likely to be arrested for driving while intoxicated than to die or be injured in an alcohol related automobile crash, and far more likely to arrive home than to be either arrested, injured, or killed. West v. Aetna Life & Accident Ins. Co., 171 F. Supp. 2d 856, 904 (N.D. Iowa 1985). In *West,* the district court cited statistics compiled by the Federal Bureau of Investigation, which demonstrate that in the year 1996, while there were 1,033,000 nationwide arrests for drunk driving, there were less than 18,000 (i.e. 17,218) alcohol related traffic fatalities. West,171 F. Supp. 2d at 903-04. In other words, the statistics show that a drunk driver is sixty times more likely to be arrested than to die as a result of a traffic accident. In fact, as the district court noted in *West,* "[w]hat `common knowledge' should actually tell a person driving while intoxicated is that he or she is . . . far more likely to arrive home than to be either arrested, injured, or killed." *Id.* at 904. According to the National Highway Traffic Safety Administration, 17,419 persons died as a result of alcohol-related traffic deaths in 2002. Although

---
[1] No reporter citation available

a high number, it is remarkably low when compared to the number of times a person impaired by alcohol got behind the wheel of a car during the same year. The website operated by Mothers Against Drunk Driving states there were more than 159 million alcohol-impaired trips taken during 2002. Based upon these numbers, one out of every 9,128 alcohol-impaired trips results in a crash that causes a fatality. The court is unaware of any mathematical formula to calculate whether a result is reasonably foreseeable, but assumes that if a result has a 1-in-9,128 chance of occurring, it is not reasonably foreseeable. Realizing that the number of alcohol-impaired trips taken is an estimate, assume that the number was overestimated by 100 million trips. Even then, only one out of every 3,387 alcohol-impaired trips results in a fatality, a percentage still lower than the chances of being struck by lightning sometime during a person's lifetime. Page 12 402 F. Supp. 2d at 712 (internal footnotes omitted). As a result, although driving while intoxicated may cause death or injury, this does not necessarily mean that death or injury is a highly likely consequence — or even a reasonably foreseeable result — of driving while intoxicated. While Plaintiff provides examples of case law presenting statistical evidence supporting the conclusion that death or injury is not a highly likely consequence of drunk driving, there is nothing in the Administrative Record, nor any evidence presented by Met Life in this action, contradicting this conclusion. Citing *Jones v. Metropolitan Life Insurance Co.*, Met Life argues that the Sixth Circuit only requires that it be objectively foreseeable that driving while intoxicated *could* result in a serious or fatal injury for an insured's death to be deemed non-accidental. The *Jones* court, however, summarizing the *Wickman* test, only refers to objective foreseeability. Nowhere in its opinion does the *Jones* court specify whether the foreseeability question is whether death *could* or *would* result. 385 F.3d at 664-65. *Wickman,* however, clearly considers "whether a reasonable person . . . would have viewed the injury as *highly likely* to occur as a result of the insured's intentional conduct." 908 F.2d at 1088

(emphasis added). In other words, the relevant inquiry is not whether a reasonable person views death as a result of drunk driving as a possible consequence (i.e. *could* happen), but whether a reasonable person views death as a highly likely or inevitable consequence of drunk driving (i.e. *would* happen).

*See also* Metro. Life. Ins. Co. v. Potter*,* 992 F. Supp 717, 730 (D.N.J. 1998) (applying *Wickman* in holding that the court cannot find as a matter of law that death is highly likely to occur as a result of drunk driving). The Eighth Circuit Court of Appeals used similar reasoning in finding that an insurance company arbitrarily and capriciously denied benefits when it determined that the insured's drunk driving related death was excluded under a self-inflicted injury exclusion. King v. Hartford Life & Accident Ins. Co.*,* 414 F.3d 994 (8th Cir. 2005) (en banc). The court reasoned that it would be unreasonable to interpret the exclusion for self-inflicted injuries to include those injuries "that were unintended by the participant, but which were contributed to by alcohol intoxication." *Id.* at 1004. As the court explained, "[o]ne rarely thinks of a drunk driver who arrives home safely as an `injured' party . . ." *Id.*

The statistics cited by the *Lennon* Court make it abundantly clear that LINA was not justified in its determination that death is the "clearly foreseeable" consequence of drunk driving. Having failed to compile or review statistics regarding the rate or incidents of drunk driving fatalities, LINA's decision is further shown to have been improperly motivated.

Due to the existence of LINA's financial interest in the decision to exclude benefits, in combination with the failure to inquire into the decedents state of mind or the applicable statistics, LINA has demonstrated that its decision was improperly motivated, and a conflict of interest exists.

**3. The Policy Must be Interpreted and Construed in Favor of the Plaintiff**

The benefit provisions of an ERISA regulated group life insurance program must be interpreted under principles of federal substantive law. Wickman v.Northeastern Nat.

Ins. Co., 908 F.2d 1077, 1084 (1st Cir. 1990) *citing* Pilot Life Ins., 481 U.S. at 56-57, 107 S.Ct. at 1557-58. Burnham v. Guardian Life Ins. Co., 873 F.2d 486, 489 (1st Cir. 1989). The federal common law on the issue of insurance benefits "must embody common-sense canons of contract interpretation." Id. "Applying the basic tenets of contract interpretation, the first place to look for a definition is in the terms of the policy contract itself. Wickman, 908 F.2d at 1084.  These terms must be given their plain meanings, meanings which comport with the interpretations given by the average person. Id. *citing*  Hoffman v. Life Insurance Co., 669 P.2d 410, 416 (Utah 1983); Knight v. Metropolitan Life Ins. Co., 437 P.2d 416 (Ariz. 1968); 10 *Couch on Insurance 2d,* § 41:9, 13 (1982).

"Courts have also held, nearly unanimously, "that insurance contracts must be liberally construed in favor of a policyholder or beneficiary . . . and strictly construed against the insurer in order to afford the protection which the insured was endeavoring to secure when he applied for the insurance."  Wickman, 908 F.2d at 1084 *citing* 13 Appleman, *Insurance Law and Practice* § 7401 at 197 (1976)  Notably, LINA, the insurer and fiduciary, has not included in the policy an alcohol or intoxication exclusion. No difficulty in draftsmanship would have prevented the inclusion of such a common provision had such an exclusion been intended.

## CONCLUSION

### LINA'S Denial of Benefits to the Plaintiff was Improperly Motivated, the Result of a Conflict of Interest, and Arbitrary and Capricious.

Whether examined under the arbitrary and capricious standard, or given heightened scrutiny as a result of improper motivation and conflict of interest, the denial of benefits in this case is improper and unsupported by any evidence. The single fact upon which LINA based its denial is the blood alcohol content of the decedent. No inquiry was made as to the decedent's state of mind, his tolerance for alcohol, other medications, the decedent's prior drunk driving injuries, or the lack thereof. No statistical evidence regarding the likelihood of death occurring due to drunk driving was investigated, considered, or cited by LINA. Statistics reveal that, contrary to LINA's contention, death

due to drunk driving is highly unlikely and unforeseeable. To imply otherwise is simply legal fiction. To be sure, there is an obvious discongruence between the two standards. LIN'a decision is not plausible in light of the record as a whole and is unsupported by substantial evidence in the record.

        Plaintiff,

        By her attorney,

          /s/Paul R. Chomko
        Paul R. Chomko, Esq.
        BBO No. 637716
        ALFORD & BERTRAND, LLC
        60 Arsenal Street
        Post Office Box 322
        Watertown, MA 02471-0322
        (617) 926-8800

CERTIFICATE OF SERVICE

      I, Paul Chomko, Esquire, certify that a copy of the foregoing has been served upon Defendant listed below by ECF, postage prepaid, this 15th day of December, 2006.

David B. Crevier, Esq.
Katherine R. Parsons, Esq.
Crevier & Ryan, LLP
1500 Main Street, Suite 2020
Springfield, MA 01115-5727

        ___/s/ Paul Chomko_____
        PAUL CHOMKO, ESQUIRE