# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INES McGILLIVRAY, )<br>　　　　　　　　Plaintiff )<br>v.　　　　　　　　　　　 )<br>　　　　　　　　　　　　 )<br>LIFE INSURANCE COMPANY )<br>OF NORTH AMERICA, )<br>　　　　　　　　Defendants ) | Civil Action No. 05-11826-MLW |

## DEFENDANT'S MEMORANDUM IN SUPPORT OF CROSS MOTION FOR JUDGMENT ON THE RECORD AND OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE RECORD

Defendant, Life Insurance Company of North America ("LINA"), submits this Memorandum in support of its Cross Motion for Judgment on the Record for Judicial Review and in Opposition to Plaintiff's Motion for Judgment on the Record. As set forth below, the Court must grant judgment in favor of LINA and deny Plaintiff's Motion for Judgment because LINA's denial of Plaintiff's claim for Accidental Death Benefits was not arbitrary and capricious since Decedent's death was the result of circumstances that were both: 1) not covered under the Accidental Death Plan; and 2) specifically excluded under the Accidental Death Plan. Plaintiff is not entitled to benefits because LINA properly determined that Decedent's death was not covered under the Plan because it was not an accident. In addition, Plaintiff is not entitled to benefits because even if Decedent's death could be construed to be an accident – which it was not under the terms of the Plan – the "accident" would be excluded from coverage since 1) it occurred in the commission of a felony; and 2) it resulted from an intentionally self-inflicted injury.

## INTRODUCTION

Plaintiff brings this action pursuant to ERISA §502(a)(1)(B)[1] for judicial review of LINA's denial of Plaintiff's application for benefits under an Accidental Death Plan.[2] <u>Facts</u> at ¶ 1. As detailed below, the Court must uphold LINA's decision to deny Plaintiff's claim for benefits as not covered under the Accidental Death Plan because: 1) LINA's interpretation of the term "accident" was reasonable; 2) LINA's conclusion that Decedent's death did not fulfill LINA's interpretation of the term "accident" was plausible based on the following facts: (a) the toxicology report indicated that Decedent's blood alcohol level was 0.242 – over three times the legal limit; (b) the police report indicated that the weather was clear, the road was dry, and the car had no mechanical defects; (c) the police report indicated that the Decedent was arrested thirteen hours prior to the fatal crash for drunk driving and his license was revoked; (d) the police report indicated that Decedent was operating his vehicle in an erratic and reckless manner, crossed the center line and struck another vehicle head on, seriously injuring the driver of the truck; and (e) Plaintiff's appeal and the records from the detox unit indicated chronic alcohol abuse; and 3) numerous courts applying the arbitrary and capricious standard of review, the same standard that applies in this case, have upheld insurers' decisions to deny benefits in cases with facts similar to the facts in this case.

In addition, Plaintiff is not entitled to benefits because Decedent's death is specifically excluded from coverage under the Accidental Death Plan. Decedent's death is excluded under the felony exclusion because Decedent, driving with a blood alcohol content over three times the legal limit, seriously injured himself and the driver of another vehicle, which constitutes a felony under Massachusetts law. Decedent's death is also excluded under the intentionally self-inflicted

---

[1] Codified at 29 U.S.C. § 1132(a)(1)(B).

[2] It should also be noted that Plaintiff applied for and LINA paid benefits under Decedent's life insurance policy.

injury exclusion because driving while intoxicated is an intentional act foreseeably resulting in serious injury or death. Finally, Plaintiff's argument that she is entitled to benefits under the Accidental Death Plan is not supported by the law or the facts of this case.

## ARGUMENT

### I.    LINA'S DENIAL OF PLAINTIFF'S BENEFITS CLAIM MUST BE REVIEWED UNDER THE ARBITRARY AND CAPRICIOUS STANDARD

Plaintiff's ERISA § 502(a)(1)(B) claim for review of LINA's denial of Accidental Death Benefits must be reviewed under the arbitrary and capricious standard of review. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). In Firestone, the Supreme Court determined that the arbitrary and capricious standard of review applies when a plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone, 489 U.S. at 115; accord, Terry v. Bayer Corp., 145 F.3d 28, 37 (1st Cir. 1998). While there are no magic words that confer discretion, "when a grant of discretionary authority is found," the arbitrary and capricious standard of review applies. Brigham v. Sun Life of Canada, 317 F. 3d 72, 81 (1st Cir. 2003) (citing, Recupero v. New England Tel. and Tel. Co., 118 F.3d 820, 827 (1st Cir. 1997)).

The Accidental Death Plan in this case states:

> For plans subject to the Employee Retirement Income Security Act (ERISA), the Plan Administrator of the Employer's employee benefit plan (the Plan) has appointed the Insurance Company [LINA] as the Plan fiduciary under federal law for the review of claims for benefits provided by this Policy and for deciding appeals of denied claims. **In this role the Insurance Company shall have the authority, in its discretion, to interpret terms of the Plan documents, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related finding of fact.** All decisions made by the Insurance Company in this capacity shall be final and binding on Participants and Beneficiaries of The Plan to the full extent permitted by law.

Facts at ¶ 4. This clearly gives LINA the discretion to both determine a claimant's eligibility for benefits and to construe and interpret the terms of the Accidental Death Plan. As such, LINA's

denial of Plaintiff's claim for Accidental Death Benefits must be reviewed under the arbitrary and capricious standard of review.

"The arbitrary and capricious standard asks only whether a fact finder's decision is **plausible** in light of the record as a whole . . . or, put another way whether the decision is supported by substantial evidence in the record." Leahy v. Raytheon Co., 315 F.3d 11, 17 (1st Cir. 2002)(citations omitted)(emphasis added). Under the arbitrary and capricious standard of review, a Court must not substitute its judgment for that of the decision maker whose decision or interpretation of the plan "will not be disturbed if it is **reasonable**." Terry v. Bayer Corp., 145 F.3d 28, 40 (1st Cir. 1998)(emphasis added). Evidence is "'substantial' if it is reasonably sufficient to support a conclusion." Vlass v. Raytheon Employees Disability Trust, 244 F.3d 27, 29 (1st Cir. 2001) (citations omitted).

In an ERISA case, like the one presently before the Court, "the non-moving party is not entitled to . . . inferences in its favor" nor are there any "disputed issues of fact for the Court to resolve." Orndorf v. Paul Revere Life Insurance Company, 404 F.3d 510, 517 & 519 (1st Cir. 2005). In addition, the existence of "contradictory evidence does not, in itself, make the administrator's decision arbitrary." Vlass v. Raytheon Employees Disability Trust, 244 F.3d 27, 29 (1st Cir. 2001)(citations omitted); see also, Sullivan v. Raytheon Co., 262 F.3d 41, 50-51 (1st Cir. 2001); Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 183-184 (1st Cir. 1998); Recupero v. New England Telephone and Telegraph Co., 118 F.3d 820, 830 (1st Cir. 1997).

As discussed below, LINA's decision was not arbitrary and capricious because its interpretation of the Accidental Death Plan was reasonable and its decision to deny benefits was plausible.

II.    **LINA DECISION THAT PLAINTIFF WAS NOT ENTITLED TO BENEFITS
UNDER THE ACCIDENTAL DEATH PLAN WAS PLAUSIBLE**

As explained above, the Court must uphold LINA's decision to deny benefits if its

interpretation was reasonable and its decision was plausible.  As explained below, LINA's

decision was not arbitrary and capricious because: 1) LINA's interpretation of the term

"accident" was reasonable; and 2) LINA's conclusion that Decedent's death did not fulfill

LINA's interpretation of the term "accident" was plausible.

A.    **LINA'S INTERPRETATION OF "ACCIDENT" WAS REASONABLE**

The Plan in this case is an Accidental Death Plan that provides "benefits for loss from

bodily injuries caused by an accident."  Facts at ¶ 5.  The Plan does not define "accident."  As

the party charged with interpreting the Plan, LINA interpreted "accident" to mean a

consequence that was not "foreseeable."  Facts at ¶ 18.  As discussed above, because LINA has

the discretion to interpret the terms of the Plan, the Court must uphold LINA's interpretation of

"accident" if it was reasonable.  Terry v. Bayer Corp., 145 F.3d 28, 40 (1st Cir. 1998); see e.g.

Cozzie v. Metro. Life Ins. Co., 140 F.3d 1104 (7th Cir.1998) (upholding interpretation of

accident as a consequence that is foreseeable); Stamp v. Met. Life. Ins. Co., 2006 WL 3617713

(D.R.I. 2006) (upholding denial of accidental death benefits where death was a foreseeable

consequence of driving while intoxicated); Mullaney v. Aetna U.S. Healthcare, 103 F.Supp.2d

486 (D.R.I. 2000) (same).

LINA's interpretation of "accident" as a consequence that is not foreseeable is reasonable

because: 1) it is consistent with the goals of the Accidental Death Plan; 2) it is consistent with

interpretations of the term accident that have been upheld by numerous other Courts; and 3) it

does not contradict the plain wording of the Accidental Death Plan.

LINA's interpretation of accident is consistent with the goals of the Accidental Death

Plan.  The primary goal of the Accidental Death Plan is to provide benefits to families of

5

participants that suffer accidental deaths. The role of LINA in this Plan is to ensure that benefits are paid to those who fall within the terms of the Accidental Death Plan in order to avoid an unwarranted escalation in the costs of providing this benefit. As the Cozzie Court concluded:

> "[w]e cannot say, therefore, that [the insurer's] determination that the purposes of the plan are best served by acknowledging a qualitative difference between the ingestion of a huge quantity of alcohol and other tragedies of human life which do not involve such a significant assumption of a known risk by the insured is incompatible with the goals of the plan."

Cozzie v. Met. Life Ins. Co., 140 F.3d 1104, 1110 (7th Cir. 1998) (the decedent in Cozzie, like the decedent in this case, had a blood alcohol level over three times the legal limit). LINA's interpretation is consistent with the goals of the Accidental Death Plan.

Moreover, LINA's interpretation of the term "accident" is consistent with the interpretations of the term "accident" that other Courts have upheld. Numerous other Courts, reviewing an insurer's decision under the arbitrary and capricious standard of review, have upheld interpretations of the term "accident" that are similar or less stringent than the one LINA applied in this case. E.g. Cozzie, 140 F.3d at 1106 (upholding, under arbitrary and capricious review, that insurer's conclusion that insured's injury was **reasonably foreseeable**, and thus not accidental, within the meaning of a policy that covered "injuries caused solely by an accident" when insured died in car wreck that occurred when insured was driving with a blood alcohol level over three times the legal limit); Eckelberry v. Reliastar Life Ins. Co., 469 F.3d 340 (4th Cir. 2006) (upholding, under heightened arbitrary and capricious review, insurer's denial of benefits where insurer determined that death or serious injury was **not "unexpected"** when driving with blood alcohol level two times the legal limit); Stamp, 2006 WL 3617713, *8-9 (upholding, under arbitrary and capricious review, the insurer's denial of benefits because it was **highly likely** that "a driver who is over three times the legal limit of blood alcohol level . . . is so impaired that . . . he is likely to 'pass out' or 'black out' and cause a fatal collision to occur."); Miller v. Auto-

Alliance Int'l, Inc., 953 F.Supp. 172, 175-77 (E.D.Mich.1997) (upholding, under arbitrary and

capricious review, the insurer's denial because death or serious injury resulting from driving with

a blood alcohol level three times the legal limit **should have been expected**); Cates v. Metro.

Life Ins. Co., 14 F.Supp.2d 1024, 1027 (E.D.Tenn.1996), aff'd 149 F.3d 1182 (6th Cir.

1998)(upholding, under arbitrary and capricious review, the denial because it was **foreseeable**

that death or serious injury would result from driving with a blood alcohol level two times the

legal limit).

     Finally, LINA's interpretation of the term "accident" does not contradict the plain

wording of the Accidental Death Plan.

     Insofar as, LINA's interpretation of the term accident is 1) consistent with the goals of

the Accidental Death Plan; 2) consistent with interpretations of the term accident that have been

upheld by numerous other Courts; and 3) does not contradict the plain wording of the Accidental

Death Plan, the Court must uphold LINA's interpretation of "accident" because it was

reasonable and, as such, not arbitrary and capricious.

**B.**    **BASED ON THE EVIDENCE BEFORE IT, LINA'S CONCLUSION THAT
DECEDENT'S DEATH WAS NOT AN ACCIDENT WAS PLAUSIBLE**

     Applying its reasonable interpretation of the term "accident," LINA concluded that

Decedent's death was not an accident because it was "clearly foreseeable." As discussed above,

because LINA has discretion to determine eligibility for benefits, the Court must uphold LINA's

decision if it is plausible. Leahy v. Raytheon Co., 315 F.3d 11, 17 (1st Cir. 2002).

     LINA conducted a through investigation of Plaintiff's claim, diligently collecting

information from the medical examiner, the police department, the plaintiff, the detox unit, local

newspapers, and the hospital to which Decedent was taken after the crash. Facts at ¶¶ 11-16; 22-

31. The toxicology report indicated that Decedent's blood alcohol level was 0.242 – over three

times the legal limit.[3]  Facts at ¶ 16.  The records from the detoxification unit show that Decedent

drank a pint of vodka a day, had no significant abstinence in 25 years and had been in detox at

least 24 times with no success.  Facts at ¶ 30.   At the scene of the fatal crash, the police

indicated that Decedent smelled strongly of alcohol and that there was a new bag with a bottle of

Smirnoff's Triple Distilled Vodka behind the driver's seat and the bottle was only one-third full.

Facts at ¶ 27.  The police report indicated that the weather was clear, the road was dry and there

were no mechanical defects in Decedent's car.  Facts at ¶ 13.  The police report also indicated

that thirteen hours before the fatal crash, Decedent was arrested for driving under the influence

and his license was revoked.  Facts at ¶ 27.  The police report stated that thirteen hours after

Decedent was arrested for driving under the influence, Decedent, continuing to drink and drive,

crossed the centerline, slammed head on into another vehicle and seriously injured the truck

driver.  Facts at ¶ 14, 26, 28.  After hitting the other vehicle, Decedent's SUV rolled over and

Decedent was ejected from the SUV.  Facts at ¶ 26.  Francisco Umberto, the driver of the other

vehicle, suffered a broken arm and other serious injuries to the left side of his body.  Facts at ¶¶

14, 28.

Based on the foregoing, LINA concluded that Decedent's death was a clearly foreseeable

consequence of driving with a blood alcohol content over three times the legal limit.  LINA's

conclusion was plausible, and as such, not arbitrary and capricious.  Numerous courts, reviewing

facts similar to those in this case under the arbitrary and capricious standard of review, have

upheld the insurer's conclusion that death resulting from a decedent driving while highly

intoxicated is not an accident.  E.g. Cozzie, 140 F.3d at 1106 (upholding insurer's conclusion that

insured's injury was reasonably foreseeable and thus not accidental when insured died in car

wreck that occurred when insured was driving with a blood alcohol level over three times the

---

[3] The legal blood alcohol content limit in Massachusetts is 0.08.  Mass. Gen. Laws c. 90 § 24L.

legal limit); Eckelberry, 469 F.3d 340 (upholding insurer's determination that death or serious injury was not "unexpected" when driving with blood alcohol level two times the legal limit); Stamp, 2006 WL 3617713, *8-9 (upholding insurer's denial of benefits because it was highly likely that "a driver who is over three times the legal limit of blood alcohol level . . . is so impaired that . . . he is likely to 'pass out' or 'black out' and cause a fatal collision to occur."); Miller, 953 F.Supp. at 175-77 (upholding insurer's denial because death or serious injury resulting from driving with a blood alcohol level three times the legal limit should have been expected); Cates, 14 F.Supp.2d at 1027 (upholding insurer's denial because it was foreseeable that death or serious injury would result from driving with a blood alcohol level two times the legal limit).[4]

Plaintiff suggests that LINA's decision is not plausible because the Accidental Death Plan does not specifically exclude coverage for death resulting from driving while intoxicated. Plaintiff's Motion for Judgment at 10. For Plaintiff to receive benefits under the Accidental Death Plan, Decedent's death must be both (1) covered under the terms of the Plan and (2) not excluded from the terms of the Plan. As the U.S. District Court of Rhode Island explained, "[e]xclusion clauses limit the scope of the coverage granted, but they do not in and of themselves grant coverage. Thus, failure to exclude an act from coverage does not automatically mean that the act is covered by the policy." Mullaney v. Aetna U.S. Healthcare, 103 F.Supp.2d 486, 494-95 (D.R.I. 2000) (citing Couch on Insurance 3d § 22:30 n. 49) (holding that the death of the insured who died in a car crash while driving with a blood alcohol level of 0.370 was not an accident and was not covered under the terms of the policy, even though there was no specific exclusion for injuries incurred while intoxicated). As discussed above, Decedent's death is not

---

[4] See also Nelson v. Sun Life Assurance Co. of Canada, 962 F.Supp. 1010, 1012-13 (W.D.Mich.1997) (same); Walker v. Metro. Life Ins. Co., 24 F.Supp.2d 775, 780-81 (E.D.Mich.1997) (same); Fowler v. Metro. Life Ins. Co., 938 F.Supp. 476, 480 (W.D.Tenn.1996) (same).

covered by the Accidental Death Plan. Consequently, the fact that the Accidental Death Plan does not specifically exclude coverage for death resulting from driving while intoxicated, does not render LINA's determination that Decedent's death is not covered by the Accidental Death Plan, arbitrary and capricious. As set forth above, the Court must uphold LINA's denial because, based on the evidence before it, LINA's decision to deny benefits was plausible, and as such, not arbitrary and capricious.

## III.    PLAINITFF IS NOT ENTITLED TO BENEFITS BECAUSE DECEDENT'S DEATH WAS EXCLUDED FROM COVERAGE

In addition to the foregoing, Plaintiff is not entitled to benefits because, even if Decedent's death could be construed to be an accident – which it was not under the terms of the Plan – the "accident" would be excluded from coverage since 1) it occurred in the commission of a felony; and 2) it resulted from an intentionally self-inflicted injury.

## A.    PLAINTIFF IS NOT ENTITLED TO BENEFITS BECAUSE DECEDENT DIED IN THE COMMISSION OF A FELONY

Plaintiff is not entitled to benefits because Decedent died in the commission of a felony.[5] As set forth above, Francisco Umberto, the driver of the vehicle that Decedent hit head-on, suffered a broken arm and other serious injuries to the left side of his body. Facts at ¶¶ 14, 28. In addition, Decedent suffered bodily injuries so serious that they resulted in his death. As

---

[5] Defendant anticipates that Plaintiff will argue that Defendant is foreclosed from raising the commission of a felony basis for denial of benefits because it was not raised in the initial denial of Plaintiff's claim. The First Circuit, citing Glista v. Unum Life Ins. Co. of Am., 378 F.3d 113, has explained that it takes a "case-by-case approach to addressing a plan's attempt to articulate in litigation a new basis for the denial of benefits." Bard v. Boston Shipping Assoc., 471 F.3d 229, 236 (1st Cir. December 19, 2006). The Court should consider the felony basis for denial of Plaintiff's claim because it is a legal analysis that is the same now as it would have been at the time LINA initially reviewed Plaintiff's claim. Plaintiff will not be prejudiced in any way if the Court considers the felony exclusion because: (1) there is nothing that Plaintiff could have submitted during the claims review process that would change the legal analysis; and (2) Plaintiff has the opportunity in her reply in this litigation to respond to the argument that Plaintiff's claim should be denied under the felony exclusion. To the extent Plaintiff argues that she could have presented evidence that Decedent lacked the requisite intent to commit a felony, causing serious bodily injury by negligently operating a motor vehicle with a blood alcohol content greater than 0.08 does not require a showing of intent. Mass Gen. Laws c. 90 § 24L.

discussed below, driving negligently or recklessly while intoxicated and causing serious bodily injury is a felony in Massachusetts and falls within the Accidental Death Plan's felony exclusion.

The Accidental Death Plan states: "no benefits will be paid for losses resulting from . . . commission of a felony by the Insured." Facts at ¶ 6.  Under Massachusetts law it is a felony to operate a motor vehicle recklessly or negligently with a blood alcohol content of or in excess of 0.08 and by such operation cause serious bodily injury. Mass. Gen. Laws c. 90 § 24L(1); Mass. Gen. Laws c. 274 § 1.  A fractured ring finger has been found sufficient to constitute "serious bodily injury." Commonwealth v. Pheanis, 778 N.E.2d 31 (Mass.App. 2002).

It is undisputed that Decedent was intoxicated under Massachusetts law.  Mass. Gen. Laws c. 90 § 24L (legal limit is 0.08).  His blood alcohol level was over three times the legal limit.  Facts at ¶ 16.  Nor is there any dispute that Decedent was driving a motor vehicle and hit another vehicle causing serious bodily injury to the other driver, as well as to himself.  Facts at ¶¶ 14, 26-28.  Furthermore, there is no dispute that Decedent was driving in a negligent or reckless manner because he was swerving all over the road and he was driving despite the fact that he had recently been arrested for driving under the influence and his license had been revoked.  Facts at ¶¶ 26-27.  As such, Decedent's actions at the time of his death constitute a felony, which is excluded from coverage by the Accidental Death Plan's felony exclusion and Plaintiff is not entitled to benefits.[6]

---

[6] To the extent Plaintiff argues that Decedent was not actually convicted of a felony, there is no requirement that the insured be convicted of a felony for the felony exclusion to apply. James v. Louisiana Laborers Health and Welfare Fund, 29 F.3d 1029 (5th Cir. 1994) (ERISA case holding that the exclusion of benefits for injuries sustained in course of commission of felony does not require a conviction); Berg v. Bd. Of Tr., Local 705 Int'l Bhd. Of Teamsters Health and Welfare Fund, 725 F.2d 68,70 (7th Cir. 1984)("[a] 'felony' occurs upon commission of the proscribed acts regardless of whether there later is a successful prosecution."); Holden Business Forms Co., Inc. v. Louisiana State University Health Sciences Center-Shreveport, 908 So.2d 86 (La. App. 2005) (to require that an exclusion for injuries incurred in commission of a felony be interpreted to require a conviction is absurd because individual could die before being convicted and it would be contrary to the plain meaning of the contract).

**B.    PLAINTIFF IS NOT ENTITLED TO BENEFITS BECAUSE DECEDENT'S DEATH RESULTED FROM INTENTIONALLY SELF INFLICTED INJURIES**

The Policy excludes from coverage losses resulting from "intentionally self-inflicted injuries. . ." <u>Facts</u> at ¶ 6.  In addition to concluding that Decedent's death was not an accident and consequently not covered by the Accidental Death Plan, LINA properly concluded that Decedent's death was excluded from coverage as an intentionally self-inflicted injury because Decedent voluntarily drove with a blood alcohol content over three times the legal limit, which resulted in his death.  <u>Facts</u> at ¶ 32.

On November 7, 2006, in a case involving facts similar to this case, the United States District Court for the Western District of Tennessee upheld an ERISA denial of benefits stating that the "courts within the Sixth Circuit agree that injuries and deaths resulting from driving while intoxicated are both reasonably foreseeable and **intentionally self-inflicted**." <u>Gregory v. Life Insurance Company of North America</u>, Slip Op. at 12 (D.WDT, November 7, 2006)(emphasis added)(copy attached as Exhibit 1) <u>see also</u>, <u>Mullaney v. Aetna U.S. Healthcare</u>, 103 F. Supp.2d 486, 495 (finding that "self-inflicted" exclusion apples in cases of death resulting from driving while intoxicated); <u>Nelson v. Sun Life Assurance Co.</u>, 962 F.Supp. 1010, 1013 (W.D. Mich. 1997); <u>Fowler v. Metropolitan Life Ins. Co.</u>, 938 F. Supp. 476, 480 (W.D. Tenn.1996); <u>but see</u>, <u>King</u>, 414 F.3d 994, 1004 (8th Cir. 2005).

In <u>Gregory</u>, the decedent had a blood alcohol content of .270%, more than three times Kentucky's limit of .08%.   In this case, Decedent's blood alcohol level was 0.242 – over three times the legal limit.  <u>Facts</u> at ¶ 16.  The police report also indicated that thirteen hours before the fatal crash, Decedent was arrested for driving under the influence and his license was revoked. <u>Facts</u> at ¶ 27.

Given these facts, it clearly was plausible for LINA to conclude that Decedent's death was intentionally self-inflicted. Accordingly, the Court must uphold LINA's denial of Plaintiff's claim as it was not arbitrary and capricious.

**IV.    PLAINTIFF'S ARGUMENT THAT SHE IS ENTITLED TO BENEFITS IS NOT SUPPORTED BY THE LAW OR THE FACTS OF THIS CASE**

Plaintiff makes the following interrelated arguments: 1) due to the fact that LINA did not mechanically apply <u>Wickman v. Northwestern National Ins. Co.</u>, 908 F.2d 1077 (1st Cir. 1990), <u>cert. denied</u>, 498 U.S. 1013 (1990), its decision is not entitled to discretionary review under the arbitrary and capricious standard; and 2) reviewing Plaintiff's claim under the de novo standard of review, this Court must determine Plaintiff's entitlement to benefits by mechanically applying the analysis set forth in <u>Wickman</u>. As set forth below, this Court: 1) must not modify the standard of review because LINA did not mechanically apply <u>Wickman</u>; and 2) because this Court must review Plaintiff's claim under arbitrary and capricious review, it may not mechanically apply <u>Wickman</u> to determine Plaintiff's entitlement to benefits. Moreover, even if this Court were to review Plaintiff's claim de novo and analyze this matter under <u>Wickman</u>, it must find that Plaintiff is not entitled to benefits.

**A.    THE COURT MUST NOT MODIFY THE STANDARD OF REVIEW BECAUSE LINA DID NOT APPLY <u>WICKMAN</u> IN ITS REVIEW OF PLAINTIFF'S CLAIM**

Without providing any legal support for her position, Plaintiff argues that de novo review, in lieu of arbitrary and capricious review, should apply in this case because LINA is acting under a conflict of interest. <u>Plaintiff's Motion for Judgment on the Record</u> at 3. Plaintiff argues that there is a conflict of interest because: 1) LINA is both the claims administrator and the insurer; and 2) LINA did not apply the <u>Wickman</u> analysis when deciding Plaintiff's claim. <u>Plaintiff's Motion for Judgment on the Record</u> at 5. As set forth below, 1) the fact that LINA is the insurer and the claims administrator is insufficient to establish a conflict of interest; and 2)

there is no requirement that LINA apply <u>Wickman</u> in its review of Plaintiff's claim, nor should there be such a requirement.

First, as Plaintiff noted, it is well established in the First Circuit that the Court shall not apply a less deferential standard because the administrator has a financial stake in the decision. <u>Id.</u>; <u>Wright v. R.R. Donnelly & Sons Co. Group Benefits Plan</u>, 402 F.3d 67, 75 (1st Cir. 2005).

Second, there is no case law to support Plaintiff's argument that LINA was required to apply the <u>Wickman</u> analysis when reviewing Plaintiff's claim for benefits or that a failure to do so constitutes a conflict of interest warranting the application of a less deferential standard of review, nor should there be. Plaintiff fails to cite to any cases supporting her argument and LINA has been unable to find any case law supporting her position. Contrary to Plaintiff's argument, "while a court may develop the 'federal common law' of ERISA to interpret a benefit plan in a case governed by de novo review [as the Court did in <u>Wickman</u>], an administrator with discretion under a plan to construe uncertain terms is not bound by this same interpretation, so long as the administrator adopts an interpretation that is 'reasonable.'" <u>King v. Hartford Life and Accident Ins. Co.</u>, 414 F.3d 994, 999 (8th Cir. 2005).

Moreover, there is no basis in law to support the argument that a claim warrants de novo review because the claim administrator did not apply a particular court's analysis. ERISA contemplates multi-state plans in which the insurer may be located in one state and the plan participants may reside in any number of other states. Requiring plans, especially plans with the discretion to interpret the terms of a plan and to determine eligibility for benefits, to apply the analyses developed by courts reviewing claims de novo would be contrary to Congress' intent that ERISA balance the goal of benefiting employees with the goal of keeping the costs of private plans down in order to encourage private employers to offer benefit plans. <u>Alessi v.</u>

Raybestos-Manhattan, Inc., 451 U.S. 504, 514-515 (1981), citing H.R.Rep.No. 93-807, p. 69 (1974), 120 Cong. Rec. 29928 (1974), 3 Leg.Hist. 4732.

Accordingly, there is no conflict of interest in this case and the Court must apply the arbitrary and capricious standard of review.

**B.    THE COURT MUST NOT MECHANICALLY APPLY WICKMAN TO DETERMINE PLAINTIFF'S ENTITLEMENT TO BENEFITS**

Plaintiff argues that the Court should review Plaintiff's claim under the de novo standard of review and should use the Wickman analysis to determine Plaintiff's eligibility for benefits. Plaintiff's Motion for Judgment on the Record at 5-11. As discussed above, LINA has the discretion to interpret the terms of the Plan and to determine eligibility for benefits under the Plan and is not required to follow the analysis in Wickman. Consequently, this Court, reviewing LINA's decision under the arbitrary and capricious standard, must not mechanically apply Wickman. Rather, as discussed in Section I, above, this Court must uphold LINA's decision if it was plausible based on the evidence before it.

However, assuming for purposes of argument that this Court could review LINA's decision de novo and mechanically applied Wickman – which would not be the correct analysis - it nevertheless, would be compelled to find that Plaintiff is not entitled to benefits.

Wickman involved a claim for accidental death benefits arising out of the insured's death, which occurred after he climbed over the railing on a bridge and fell off. The court reviewed the plaintiff's claim de novo because the plan at issue in that case did not provide for arbitrary and capricious review. Under de novo review, the lower court determined that the decedent's death was not an accident within the terms of the insurance policy because decedent knew or should have known that serious bodily injury or death was a probable consequence of his actions. Wickman, 908 F.2d at 1088-89.

The First Circuit reviewed and upheld the lower court's decision and crafted a three-part analysis **to assist courts reviewing claims for accidental death benefits under the de novo standard of review** in determining whether the insured's death was accidental.[7]  Under the Wickman analysis: (1) the Court determines whether, at the time the policy was purchased, the insured expected an injury similar in type or kind to that suffered; (2) if the Court determines that the insured did not expect an injury similar in type or kind, then the Court must determine whether or not those expectations were reasonable from the perspective of the insured.  If the Court "determines that the suppositions were unreasonable, then the injuries shall be deemed not accidental;" and (3) if the Court, "in attempting to ascertain the insured's actual expectation, finds the evidence insufficient to accurately determine the insured's subjective expectation, the [Court] should then engage in an objective analysis of the insured's expectations."  The objective analysis should take into account the background and characteristics of the insured and consider whether a reasonable person in the shoes of the insured would expect the resulting injury. Wickman, 908 F.2d at 1088.

The first step in Wickman is to determine whether **at the time the policy was purchased,** the insured expected an injury in similar type or kind to that suffered.  In this case, there is no evidence of what Decedent's actual expectations were at the time the policy was purchased, or for that matter, any evidence of Decedent's actual expectations at any time. Plaintiff suggests that Decedent's "long history of alcoholism and driving under the influence of alcohol, including arrests, the most recent being just 13 hours before the fatal crash," is evidence of the fact that Decedent did not expect to suffer injuries in a car crash while driving with a blood alcohol level of 0.242.  Plaintiff's Motion for Judgment on the Record at 6.  Contrary to Plaintiff's suggestion, these allegations do not provide any evidence of Decedent's actual

---

[7] Notably Wickman did not involve death due to an illegal act or criminal conduct and therefore Wickman is arguably not applicable at all to the question of accidental death under the circumstances of this case.

expectations and the Record, therefore, contains no evidence of Decedent's subjective expectations. Wickman instructs if there is insufficient evidence to determine that insured's subjective expectation, then the Court must engage in an objective analysis.

The objective facts of this case demonstrate that Decedent should have expected to suffer serious bodily injury or death. Generally speaking, the dangers of driving while intoxicated are widely publicized and any reasonable person would expect that driving with a blood alcohol content of three times the legal limit is likely to result in serious bodily injury or death. Specifically, a reasonable person in Decedent's shoes, would expect that driving with a blood alcohol level of more than three times the legal limit would likely result in serious bodily injury or death. Significantly, Decedent was arrested for driving under the influence thirteen hours before the fatal crash. Even if he was somehow not aware of the dangers of driving while intoxicated at the time he was arrested for driving under the influence, he was clearly aware of the dangers after he was arrested. Moreover, the fact that Decedent, after being arrested, continued to drive while intoxicated demonstrates an intention to cause serious harm to himself or others. A reasonable person in Decedent's shoes – i.e. one that drives almost immediately after having been arrested for driving under the influence and having his license revoked – must be deemed to have consciously ignored or invited the dangers associated with criminal conduct by risking harm to oneself of others, rendering serious injury or death a clearly foreseeable result.

Against the overwhelming evidence that Decedent should have expected to suffer serious bodily injury or death, Plaintiff argues that there are statistics indicating that it is "highly unlikely, and therefore unexpected, that driving under the influence of alcohol will lead to death." Plaintiff's Motion for Judgment on the Record at 7. In support of this argument, Plaintiff merely cites to an Eastern District of Michigan case that suggests such statistics exist.

17

Plaintiff's Motion for Judgment on the Record at 7-9 (citing Lennon v. Met. Life Ins. Co., 446 F.Supp.2d 245 (E.D. Mich. 2006). The First Circuit has instructed that this Court's review of LINA's decision, under either de novo and arbitrary and capricious review, is limited to the evidentiary record presented to the administrator. Liston v. Unum Corp. Officer Severance Plan, 330 F. 3d 19, 23 (1st Cir. 2003) (arbitrary and capricious); Orndorf v. Paul Revere Life Ins. Co., 404 F.3d 510, 519 (1st Cir. 2005) (de novo); see e.g. Eckleberry, 469 F.3d 340 (reversing lower court decision at 402 F.Supp.2d 804 that relied on statistics not reviewed by the claims administrator).[8] Consequently, this Court cannot consider the statistics allegedly presented in Lennon because they were not in the evidentiary record presented to LINA and consequently, are not in the Record for Judicial Review. Id.

Moreover, even if the Court were to amend the Record for Judicial Review to include these statistics – which the holdings of the First Circuit have precluded – this Court should find that the statistics do not compel the conclusion advanced by the Plaintiff. First, not only does Lennon depart from the majority of Courts that have considered this issue, it departs from the mandate of the Sixth Circuit Court of Appeals – the jurisdiction within which the Eastern District of Michigan is located. Specifically, in Cates v. Metro. Life Ins. Co., the Sixth Circuit upheld the decision of the insurer to deny accidental death benefits where the decedent was driving with a blood alcohol content of 0.18 at the time he died because it was not an accident. Cates v. Metro. Life Ins. Co., 14 F.Supp.2d 1024, 1027 (E.D.Tenn.1996), aff'd 149 F.3d 1182 (6th Cir. 1998).

---

[8] To the extent Plaintiff argues that the Court should take judicial notice of the statistics and consider them in its review of this case – the Court must decline to do so. There is a question of fact with respect to the applicability of the referenced statistics to this case. Specifically, whether the statistics have anything to do with habitual drunk drivers who – due to the fact that they drive drunk more frequently, necessarily have a higher chance of serious injury or death while driving intoxicated. Moreover, an insurer with the discretion to interpret the terms of a Plan and to determine eligibility for benefits, is not required to rely on statistical probabilities in determining what standard to apply when reviewing a claim to determine whether a death was an accident. King, 414 F.3d at 1004.

Second, reliance on the statistics considered in <u>Lennon</u> is inappropriate because it fails to consider other factors that Courts are required to consider under the <u>Wickman</u> analysis including, the characteristics of the driver, the length of intoxication, the type of road, the weather conditions and the degree of intoxication.[9] <u>Stamp v. Met. Life. Ins. Co.</u>, 2006 WL 3617713, *8-9 (D.R.I. 2006). In this case, Decedent was not just intoxicated – he had a blood alcohol content over three times the legal limit, he had been arrested just thirteen hours before the fatal crash for driving under the influence and his license was revoked. Under these facts, regardless of the <u>Lennon</u> statistics, it was highly likely that this particular Decedent was going to suffer serious bodily injury or death as a result of his actions. In <u>Stamp</u>, the Court refused to rely on the statistics in <u>Lennon</u> and held that decedent's death was not an accident because it was highly likely that "a driver who is over three times the legal limit of blood alcohol level . . . is so impaired that . . . he is likely to 'pass out' or 'black out' and cause a fatal collision to occur." <u>Stamp</u>, 2006 WL 3617713, *8-9. Accordingly, even if this Court were to improperly amend the Record for Judicial Review to contain the <u>Lennon</u> statistics – it must find that Plaintiff is not entitled to Accidental Death Benefits.

Consequently, contrary to Plaintiff's arguments, the fact that LINA declined to apply the <u>Wickman</u> analysis in its review of Plaintiff's claim does not change the standard of review that

---

[9] Plaintiff also cites <u>Metro. Life Ins. Co. v. Potter</u>, 992 F.Supp. 717 (D.N.J. 1998) and <u>King v. Hartford Life & Accident Ins. Co.</u>, 414 F.3d 994 (8th Cir. 2005) to support her argument that LINA's decision was not justified due to the statistics referenced in <u>Lennon</u>. <u>Plaintiff's Motion for Judgment</u> at 9. Neither of these cases are applicable to the case at bar. Unlike <u>Potter</u>, the parties in this case are not asking that the Court determine, as a matter of law, that driving while intoxicated is never an accident, rather, LINA simply requests that this Court determine that on these particular facts, LINA's conclusion that this particular Decedent's death was not an accident was plausible based on the evidence before it. In <u>King</u>, the Court of Appeals, en banc, reviewing the Court of Appeals Panel decision, refused to rely on statistics that were not presented to the administrator. Relying largely on statistical evidence presented by Plaintiff at trial but not during the claims review process, the Panel had reversed the District Court's grant of summary judgment to the insurer. Upon review of the Panel decision, the Court of Appeals, en banc, reversed the Panel decision and remanded the claim to the claims administrator to review the claim under the standard the insurer set forth at trial as the appropriate standard to be applied in determining whether decedent's death was an accident. <u>King</u>, 414 F.3d at 997-98, 1006.

this Court must apply in reviewing LINA's decision. As such, this Court must review LINA's decision under arbitrary and capricious review to determine whether LINA's decision was plausible in light of the evidence before it during the administrative review process and cannot apply the Wickman analysis. However, even if this Court does review Plaintiff's claim de novo and applies the Wickman analysis, it must find that Plaintiff is not entitled to benefits.

## CONCLUSION

The Court must grant Defendant's Motion for Judgment on the Record and deny Plaintiff's Motion for Judgment on the Record. As explained above, the Court must uphold LINA's decision to deny benefits because LINA's determination that Decedent's death was not covered, because it was not an accident, and was specifically excluded from coverage under the Plan as a self-inflicted injury, was plausible based on the evidence before it. In addition, Plaintiff is not entitled to benefits because Decedent died in the commission of a felony for which coverage is excluded under the felony exclusion. Moreover, even if this Court reviews Plaintiff's claim de novo – which it should not – Plaintiff is not entitled to benefits.

Respectfully submitted,

The Defendant,

By its Counsel:

CERTIFICATE OF SERVICE

I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on this 31st day of January, 2007.

/s/Katherine R. Parsons

/s/David B. Crevier
David B. Crevier, BBO# 557242
Katherine R. Parsons, BBO# 657280
CREVIER & RYAN, LLP.
1500 Main Street, Suite 2020
Springfield, MA 01115-5727
Tel: (413) 787-2400
Facsimile: (413) 781-8235
Email: dcrevier@crevierandryan.com
       kparsons@crevierandryan.com

# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| DEE GREGORY, Administrator of the<br>Estate of DENVER DENNIS GREGORY,<br>Deceased,<br><br>     Plaintiff,<br><br>VS.<br><br>LIFE INSURANCE COMPANY<br>OF NORTH AMERICA,<br><br>     Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 1:06-cv-1048 |

---

ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE
ADMINISTRATIVE RECORD

---

I. Factual and Procedural Background

This ERISA action involves the propriety of an insurance company's denial of accidental

death benefits to Plaintiff, Dee Gregory ("Plaintiff"), following her son's death in a motor

vehicle accident. As is the case in an increasing number of motor vehicle accidents involving

young people, the deadly combination of alcohol and speed appear to be the culprits in this

unfortunate event as well. The Court finds the following facts based on its review of the

administrative record.

*1.*     *The Accident*

On February 24, 2005, Plaintiff's son, Denver Gregory ("Gregory"), was fatally injured

in a motor vehicle accident while traveling south on U.S. Highway 641 near Almo, Kentucky.

According to witnesses that observed Gregory's 1991 Ford Explorer immediately before the

crash, it had been traveling well in excess of the posted speed limit of 55 miles per hour (perhaps

seventy to eighty miles per hour).  The police report indicates that the accident occurred when

Gregory's vehicle began to drift toward the right shoulder of the highway.  As Gregory

attempted to correct his position, he lost control of his truck and exited the right side of the

highway.  The vehicle careened over a dirt embankment which propelled it into a barrel roll and

ejected Gregory from the driver's seat.  The traffic report did not list any vehicular or

environmental factors as contributing to the wreck—the weather was clear and the road

conditions were dry when the accident occurred.

     However, the officer at the scene did "detect[ ] a strong smell of alcoholic beverage about

the person of [Gregory]" and planned to "summons him into court for the charge of DUI."

(Admin. R., 138).  The traffic report indicated that Denver was a "suspected drinking driver" and

listed "alcohol involvement," "not under proper control," and "overcorrecting/oversteering" as

the only factors that contributed to the accident.  (Admin. R., 138-39).  The toxicology report

confirmed that Gregory was intoxicated when he lost control of his vehicle; his blood alcohol

content was .270 percent, more than three times Kentucky's legal limit of .08 percent.[1]

     From the accident scene, emergency workers took Gregory to Maury County Hospital.

However, due to the nature and severity of his injuries, he was transferred to Vanderbilt

University Medical Trauma Center the next day.  On March 1, 2005, Gregory was discharged,

---

[1] KY. REV. STAT. ANN. § 189A.010 (2006) provides, in pertinent part, "(1) A person shall not operate or be in physical control of a motor vehicle anywhere in this state: (a) having an alcohol concentration of 0.08 or more as measured by a scientifically reliable test . . . ."

but he began experiencing respiratory problems shortly thereafter.  On March 2, 2005, he was re-admitted to Camden Healthcare & Rehabilitation Center.  On March 4, 2005, Gregory died.  His death certificate lists the underlying cause of death as the February 4, 2005 "automobile accident."

2.    *The Insurance Policy*

At the time of his death, Gregory was insured under an employee benefits plan, which includes an accidental death benefit policy ("Plan" or "Policy"), by virtue of his employment with Ingram Industries ("Ingram").[2]  The Plan is governed by ERISA, 29 U.S.C. § 1003.  Ingram has designated Defendant, Life Insurance Company of North America ("LINA"), as its claim fiduciary.[3]  In this role, LINA " . . . ha[s] the authority, in its discretion, to interpret the terms of the Plan documents, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related findings of fact."  (Admin. R., 28).  In addition, the Plan requires that "[w]ritten or authorized electronic proof of loss satisfactory to [LINA] must be given to [LINA] . . . ."  (Admin. R., 175).  Plaintiff, Gregory's mother, was a primary beneficiary under the Plan.

The Policy purports to be a "Limited," "Group Accident Only Insurance Policy." (Admin. R., 159).  According to its terms, LINA "will pay the benefit for any one of the Covered Losses listed in the Schedule of Benefits, if the Covered Person suffers a Covered Loss resulting directly and independently of all other causes from a Covered Accident . . . ."  The Policy defines a "Covered Loss" as

---

[2] Gregory's policy bore policy number COA-002533.

[3] LINA is a subsidiary of CIGNA corporation.

3

A loss that is all of the following:
1.    the result, directly and independently of all other causes, of a Covered Accident;
2.    one of the Covered Losses specified in the Schedule of Covered Losses;
3.    suffered by the Covered Person within the applicable time period specified in the Schedule of Benefits.

(Admin. R., 168). Thus, in order to be a "Covered Loss," the loss must result from a "Covered

Accident." The Policy defines a "Covered Accident" as

a sudden, *unforeseeable*, external event that results, directly and independently of all other causes, in a Covered Injury or Covered Loss and meets all of the following conditions:
1.    occurs while the Covered Person is insured under this Policy;
2.    is not contributed to by disease, Sickness, mental or bodily infirmity;
3.    is not otherwise excluded under the terms of this Policy.

(Admin. R., 168) (emphasis added). In addition to setting forth the requirements for coverage,

the Policy also excludes from coverage, among other things, any *"intentionally self-inflicted*

*Injury,* suicide or any attempt thereat while sane or insane." (Admin. R., 173) (emphasis added).


3.    *The Claim*

Shortly after her son's death, on March 23, 2005, Plaintiff filed a claim for accidental

death benefits under the Policy. On May 5, 2005, LINA denied Plaintiff's claim. It based its

decision on Gregory's voluntary intoxication at the time of the accident, from which it concluded

that Gregory's death was intentionally self-inflicted and, therefore, specifically excluded from

coverage under the terms of the Policy.

On October 19, 2005, Plaintiff appealed LINA's decision. On appeal, Plaintiff argued

that Gregory's death was not "due to an intentional self-inflicted injury, suicide or any intent

[sic] threat [sic] while sane or insane." (Admin. R., 72). Rather, he "died as a result of

complications he suffered from an automobile collision as well as complications due to failures

and omissions by his subsequent healthcare providers."[4] (Admin. R., 72).

On February 6, 2006, LINA's review board completed its review of the appeal of the denial of Plaintiff's claim and upheld the original determination that accidental death benefits were not payable. Although LINA again based its denial on Gregory's voluntary intoxication, this time it denied coverage on two grounds. Ultimately, LINA concluded that

> Mr. Gregory's death is not a Covered Loss under the terms of the ERISA Policy at issue as it is foreseeable that driving while intoxicated may result in death or bodily harm. As such, the loss was clearly foreseeable. Further, the loss is excluded under the terms of the Policy as an intentionally self-inflicted injury. Governing law makes clear that this type of event is not accidental in the context of an ERISA plan's accidental death benefit, and thus we have determined that the claim must be denied.

(Admin. R., 66).

### 4.    The Lawsuit

On March 2, 2006, Plaintiff filed the instant lawsuit against LINA, claiming that, as primary beneficiary under the Policy, she is entitled to accidental death benefits.[5]  On August 30, 2006, LINA filed a motion for judgment on the administrative record on the ground that it did not act arbitrarily and capriciously in denying accidental death benefits to Plaintiff. In support of its position, LINA claims that Gregory's death was not a "Covered Loss" because injuries resulting from drunk driving are reasonably foreseeable. LINA also claims that Gregory's death was specifically excluded from coverage because injuries resulting from voluntary intoxication

---

[4] Despite Plaintiff's assertion to the contrary, the administrative record contains no evidence that medical malpractice contributed to her son's death. Moreover, Plaintiff does not advance this argument in this proceeding as she has not filed a response to Defendant's motion for judgment on the administrative record.

[5] Section 1132(a)(1)(B) of ERISA allows a beneficiary to file a lawsuit to recover benefits due under a plan.

are also intentionally self-inflicted.  Plaintiff never filed a response in opposition to Defendant's

motion, which was due on September 15, 2006.  For the reasons that follow, LINA's motion for

judgment on the administrative record is hereby GRANTED.  The Court AFFIRMS the

administrative ruling.

## II. Applicable Law

*1.    The Proper Standard of Review*

"ERISA was enacted to promote the interests of employees and their beneficiaries in

employee benefit plans and to protect contractually defined benefits."  Firestone Tire & Rubber

Co. v. Bruch, 489 U.S. 101, 113 (1989) (internal quotation marks and citations omitted).

"Although it is a comprehensive and reticulated statute, ERISA does not set out the appropriate

standard of review for actions under § 1132(a)(1)(B) challenging the benefit eligibility

determinations."  Id. at 108-09 (internal citations omitted).  However, in Firestone, the Supreme

Court held that "a denial of benefits challenged under [ERISA] is to be reviewed under a *de novo*

standard unless the benefit plan gives the administrator or fiduciary discretionary authority to

determine eligibility for benefits or to construe the terms of the plan."  Id. at 115.  Conversely,

"[w]henever a plan administrator has the discretionary authority to determine benefits [or to

construe the terms of the plan], a court must review an administrative decision to deny an

applicant's request under 'the highly deferential arbitrary and capricious standard of review.'"

Moore v. Metropolitan Life Ins. Co., No. 04-73935, 2006 U.S. Dist. LEXIS 7196, at *7 (E. D.

Mich. Feb. 6, 2006) (*quoting* Yeager v. Reliance Std. Life Ins. Co., 88 F.3d 376, 381 (6th Cir.

1996)).  In order to trigger the highly deferential arbitrary and capricious standard, the Sixth

Circuit has required an "express" grant of authority to the plan's administrator.  Yeager, 88 F.3d

6

at 380; *see also* <u>Brown v. Ampco-Pittsburgh Corp.</u>, 876 F.2d 546, 550 (6th Cir. 1989) (requiring

that grant of discretion be "clear"). This does not mean, however, that "'discretionary authority'

hinges on incantation of the word 'discretion' or any other 'magic word.'" <u>Johnson v. Eaton</u>

<u>Corp.</u>, 970 F.2d 1569, 1572 n.2 (6th Cir. 1992) (*quoting* <u>Block v. Pitney Bowes Inc.</u>, 952 F.2d

1450, 1453 (D.C. Cir. 1992). "Rather, the Supreme Court direct[s] lower courts to focus on the

breadth of the administrators' power – their 'authority to determine eligibility for benefits or to

construe the terms of the plan.'" <u>Block</u>, 952 F.2d at 1453 (*quoting* <u>Firestone</u>, 489 U.S. at 115).

In this case, the breadth of LINA's power to determine eligibility for benefits and to

construe the terms of the plan is substantial. Specifically, the Policy provides that LINA "shall

have the authority, in its *discretion*, to interpret the terms of the Plan documents, to decide

questions of eligibility for coverage or benefits under the Plan, and to make any related findings

of fact." (Admin. R., 175) (Emphasis added). In addition, the Policy requires that "[w]ritten or

authorized electronic proof of loss satisfactory to [LINA] must be given to [LINA] . . . ."

(Admin. R., 175). "Courts in other litigations have determined that an employee benefits plan,

which required the submission of a satisfactory proof of loss, resulted in a grant of discretionary

authority." <u>Moore</u>, No. 04-73935, 2006 U.S. Dist. LEXIS 7196, at *9. *See* <u>Perez v. Aetna Life</u>

<u>Ins. Co.</u>, 150 F.3d 550, 555 (6th Cir. 1998) (insurance company may require "satisfactory

evidence . . . that [the claimant] has furnished all required proofs. . ." as part of the proof of

claim"); <u>Yeager</u>, 88 F.3d at 380-81 (claimant must submit "satisfactory proof of Total Disability

to us"); <u>Miller v. Metropolitan Life Ins. Co.</u>, 925 F.2d 979, 983 (6th Cir. 1991) (disability

determined "on the basis of medical evidence satisfactory to the Insurance Company"); <u>Miller v.</u>

<u>Auto-Alliance Int'l Inc.</u>, 953 F.Supp. 172, 175 (E. D. Mich. 1997) (benefits paid "when [insurer]

receive[s] notice and satisfactory proof of loss").

Because the Policy gives LINA clear and express authority to construe the Policy's terms, to determine eligibility for coverage, and to require satisfactory proof of loss, the Policy cloaks LINA with a degree of discretion sufficient to trigger the "arbitrary and capricious" standard of review.  Accordingly, the Court will afford an appropriate deference to the administrative decision in reviewing LINA's denial of accidental death benefits.


2.    *The Arbitrary and Capricious Standard of Review*

"The arbitrary and capricious standard is the least demanding form of judicial review of administrative action." Davis v. Kentucky Finance Cos. Retirement Plan, 887 F.2d 689, 693 (6th Cir. 1989) (internal quotation marks omitted).  The Court will uphold LINA's decision so long as it can offer "a reasoned explanation, based on the evidence" for its denial. Id.  Stated differently, LINA's denial of benefits is not arbitrary and capricious if it is "rational in light of the plan's provisions." Miller, 925 F.2d at 984.  Although highly deferential, the court still must exercise judicial review powers. Jones v. Metro Life Ins. Co., 385 F.3d 654, 661 (6th Cir. 2004). In other words, the Court will not merely "rubber stamp" the administrator's decision under the arbitrary and capricious standard. Id.  A court's review of a plan administrator's decision in an ERISA case, whether the court is conducting a *de novo* review or a review under the arbitrary and capricious standard, must be based solely on the administrative record." Miller, 925 F.2d at 986.

8

3.    *Sixth Circuit View on Whether Injuries Resulting from Driving While Intoxicated are Reasonably Foreseeable and Intentionally Self-inflicted for Purposes of Accidental Death Benefit Coverage?*

In the Sixth Circuit, an insurance company does not act arbitrarily and capriciously in denying payment of accidental death benefits where the insured's death resulted from his own intoxication. To be more precise, courts of this Circuit agree that injuries resulting from drunk driving are both reasonably foreseeable and intentionally self-inflicted for purposes of determining coverage under an accidental death benefits policy. This very Court held as much in Fowler v. Metropolitan Life Ins. Co., 938 F. Supp. 476 (W. D. Tenn. 1996). There, the plaintiff's son was killed when his car struck a tree. Id. at 478. Later testing revealed that the decedent's blood alcohol content was .26 percent at the time of the wreck, well above Tennessee's legal limit of .10 percent. Id. At the time of his death, the deceased was covered under an employee benefit plan through his employer, which included an accidental death benefit similar to the one at issue in this case. Id. Specifically, the Fowler policy limited coverage to accidental deaths and excluded from coverage deaths resulting from intentionally self-inflicted injuries. Id. at 478-79. As in this case, the plaintiff sought and was denied benefit payments under the accidental death provisions of his son's insurance policy. Id. at 479. On review, this Court applied the arbitrary and capricious standard and affirmed the insurance company's denial of accidental death benefits. Id. at 479-80. In doing so, this Court pointed out the "widely known and widely publicized" "hazards of drinking and driving" and found that "[i]t is clearly foreseeable that driving while intoxicated may result in death or bodily harm." Id. at 480. Ultimately, this Court held, "As the decedent should have foreseen the consequences of driving while intoxicated, Met Life's determination that his death was not accidental was

9

reasonable. It was also reasonable to find that his death was, at least partially, intentionally self-inflicted." Id. at 480.

The United States Court of Appeals for the Sixth Circuit has also held that deaths resulting from drunk driving are intentionally self-inflicted and not accidental so as to exclude them from coverage under an "accidental" death benefits plan. In Cates v. Metropolitan Life Ins. Co., No. 96-660, 1998 U.S. App. LEXIS 14975 (6th Cir. 1998), the plaintiff filed a claim for payment of accidental death benefits under her husband's employee benefits plan following his death in a motor vehicle accident while driving under the influence. Id. at *1. The accidental death policy in Cates was very similar to the one at issue in this case in that it covered only accidental losses and excluded from coverage losses which were intentionally self-inflicted. Id. at *3. At the administrative stage, the insurance company cited the pertinent provisions of the plan and gave its reasons for denying accidental death benefits: "The mental and physical impairments caused by alcohol consumption were intentionally self-inflicted . . . . In addition, the act of driving while so impaired rendered the infliction of [serious] injury or death reasonably foreseeable and, hence, not accidental as contemplated by the plan." Id. at *4. The Sixth Circuit affirmed the district court's grant of summary judgment in favor of the defendant insurance company, holding that

> there is no evidence indicating that the decision of the plan administrator denying accidental death benefits was arbitrary and capricious. Met-Life has broad discretion to construe the terms of the plan and its finding that the "act of driving while so impaired rendered the infliction of [serious] injury or death reasonably foreseeable and, hence, not accidental as contemplated by the plan" was not irrational in light of the plan's provisions.

Id. at *7-8.

Finally, Moore v. Metropolitan Life Ins. Co., No. 04-73935, 2006 U.S. Dist. LEXIS 7196

(E. D. Mich. Feb. 6, 2006), dealt with an insurance company's denial of accidental death benefits

following a fatal motor vehicle accident in which the insured driver was driving drunk *and*

speeding. Id. at *2-3.  In that case, the defendant insurance company denied the plaintiff's

claim for accidental death benefits on the ground that the "act of driving while so impaired

rendered the infliction of serious injury or death reasonably foreseeable and, hence, not

accidental as contemplated by the Plan." Id. at *11-12.  The Court affirmed the administrative

decision under an arbitrary and capricious standard of review, holding that

> it was entirely reasonable for MedLife [sic] to have concluded that the Decedent
> should have foreseen the possibility of serious bodily injury or death to himself
> and to others as a result of the dangerous operation of his vehicle while
> intoxicated . . . . Consequently, the operation and crashing of a vehicle
> subsequent to voluntary intoxication cannot be considered to have been an
> 'accident' for purpose of [accidental death benefits] under the Plan."

Id. at.*14.  Other Circuits have similarly concluded that injuries sustained as a result of drunk

driving, though unintentional, are not accidental because the result is reasonably foreseeable.

*See* Cozzie v. Metropolitan Life Ins. Co., 140 F.3d 1104, 1110 (7th Cir. 1998) (death resulting

from drunk driving was not accidental); Baker v. Provident Life & Accident Ins. Co., 171 F.3d

939, 943 (4th Cir. 1999) (motor vehicle accident subsequent to driving while intoxicated was not

accidental).

### III. Analysis

In support of its motion for judgment on the administrative record, LINA contends that it

did not act arbitrarily and capriciously in denying payment of accidental death benefits to

Plaintiff.  Specifically, LINA claims that Gregory's death was not a "Covered Loss" because

injuries resulting from drunk driving are reasonably foreseeable.  LINA also claims that

Gregory's death was specifically excluded from coverage because injuries resulting from

11

voluntary intoxication are also intentionally self-inflicted.  Plaintiff has not responded to

Defendant's motion.

In this case, the toxicology report indicates that Gregory's blood alcohol content was

.270 percent immediately following the wreck, more than three times Kentucky's legal limit of

.08 percent.  In addition, the Policy pursuant to which Plaintiff seeks to recover accidental death

benefits only covers accidental, i.e., unforeseeable, losses and excludes from coverage those

losses which are intentionally self-inflicted.  Furthermore, courts within the Sixth Circuit agree

that injuries and deaths resulting from driving while intoxicated are both reasonably foreseeable

and intentionally self-inflicted.  Therefore, it was logical and reasonable for LINA to conclude

that Gregory's voluntary intoxication caused the accident which eventually led to his death, and

that it was reasonably foreseeable that his operation of a motor vehicle at a high rate of speed

while under the influence of alcohol could result in serious bodily injury or death.  " . . . [T]he

hazards of drinking and driving are widely known and widely publicized.  It is clearly

foreseeable that driving while intoxicated may result in death or bodily harm."  Fowler, 938 F.

Supp. at 480.  It was also logical and reasonable for LINA to conclude, based on the above

evidence, that the injuries which led to Gregory's death were intentionally self-inflicted.

Therefore, LINA did not act arbitrarily and capriciously in determining that Gregory's death was

not a "Covered Loss" as defined by the Policy and that it was also intentionally self-inflicted.


IV. Conclusion

Because LINA did not act arbitrarily and capriciously in denying payment of accidental

death benefits to Plaintiff, Defendant's motion for judgment on the administrative record is

12

hereby GRANTED.  The Court AFFIRMS the administrative decision.

<u>s/ **James D. Todd**</u>
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

13