UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                   )
INES McGILLIVRAY,                  )
                    Plaintiff      )
                                   )
v.                                 )   Civil Action No. 05-11826-MLW
                                   )
LIFE INSURANCE COMPANY             )
OF NORTH AMERICA,                  )
                    Defendants     )
_____)

**DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE RECORD FOR JUDICIAL REVIEW**

Defendant, Life Insurance Company of North America, proffers this Statement of Undisputed Facts in Support of its Motion for Judgment on the Record for Judicial Review filed herewith.

**THE PARTIES**

1. Plaintiff, Ines McGillivray, seeks accidental death and dismemberment benefits pursuant to ERISA § 502(a)(1)(B) under a Group Accident Policy offered to Plaintiff through her employment with Partners Healthcare Systems Inc. See Complaint at 1, 3 and ¶ 5 (Document No. 1 on this Court's Docket).

2. Defendant, Life Insurance Company of North America ("LINA"), issued and insures the Group Accident Policy. See, Record for Judicial Review ("Record") (Document No. 14 on this Court's Docket) at Bates stamped page 1 (all subsequent references to Bates stamped pages in the Record are in the following form: Record at 1).

## THE "ACCIDENTAL DEATH PLAN"

3. The Plan in place at the time of, and applicable to, Plaintiff's claim for accidental death and dismemberment benefits is Group Accident Policy, Policy No. OK 826557 ("Accidental Death Plan"). Record at 1-23.

4. The Accidental Death Plan gives LINA the discretion to both determine a claimant's eligibility for benefits and to construe and interpret the terms of the Plan, stating:

> **PAYMENT OF CLAIMS:**
> For plans subject to the Employee Retirement Income Security Act (ERISA), the Plan Administrator of the Employer's employee benefit plan (the Plan) has appointed the Insurance Company [LINA] as the Plan fiduciary under federal law for the review of claims for benefits provided by this Policy and for deciding appeals of denied claims. In this role the Insurance Company shall have the authority, **in its discretion, to interpret terms of the Plan documents, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related finding of fact.** All decisions made by the Insurance Company in this capacity shall be final and binding on Participants and Beneficiaries of The Plan to the full extent permitted by law.

Record at 4.

5. Under the terms of the Accidental Death Plan, benefits are payable for the following:

> We agree to pay benefits for loss from bodily injuries:
> a)  caused by an accident which happens while an insured is covered by this policy; and
> b)  which, directly and from no other causes, result in a covered loss. (See the Description of Coverage.)
>
> We will not pay for benefits if the loss was caused by:
> a)  sickness, disease, or bodily infirmity; or
> b)  any of the Exclusions listed in the policy.

Record at 1.

6. The Accidental Death Plan includes the following exclusions:

> No benefits will be paid for loss resulting from:
> 1. intentionally self- inflicted injuries, or any attempt threat, while sane or insane.
> 2. declared or undeclared war or act of war.

     3. accident occurring while the insured is serving on full-time active duty for more than 30 days in any Armed forces.
     4. travel or flight in any aircraft or device which can fly above the earth's surface if . . .
     5. commission of a felony by the Insured.
     6. sickness, disease, bodily or mental infirmity or medical or surgical treatment thereof of bacterial or viral infection, regardless of how contracted.

Record at 3.

## PLAINTIFF'S CLAIM FOR BENEFITS

7. On or about January 15, 2004, Plaintiff's spouse, Paul McGillivray ("Decedent"), died. Record at 52.

8. Decedent was insured under the Accidental Death Plan. Record at 24.

9. On or about February 26, 2004, Plaintiff, through her employer, submitted a claim for the $100,000.00 accidental death benefit ("Accidental Death Benefits") under the Accidental Death Plan. Record at 24-25, 135.

10. Plaintiff's claim identified the accident as a "car accident – car collision with truck – [Decedent] ejected from car. Traumatic arrest on scene – multiple trauma," occurring on January 15, 2004, 2-3 pm. Record at 25.

## THE CLAIM INVESTIGATION PERIOD

LINA Gathered Information Regarding the Circumstances of the Collision and Decedent's Death

11. On or about March 18, 2004, LINA requested a copy of the police incident report from the Peabody Police Department. Record at 132.

12. On or about March 29, 2004, LINA requested a copy of the toxicology and autopsy reports from the Chief Medical Examiner. Record at 137.

13. On or about April 1, 2004, LINA received a copy of the Police Report and Operation Information Sheet. The Police Report indicated that the Accident Reconstruction Report

3

was pending. Record at 56. The report noted that the road surface was dry, the weather was clear and that there were no mechanical defects of Decedent's vehicle. Record at 55-56.

14. LINA also obtained a copy of an article about the collision from the local newspaper that was consistent with the police report. Record at 67-68. The article indicated that Decedent had been charged with drunken driving early in the morning of January 15, 2004 and "was killed 13 hours later when his SUV slammed into a box truck and rolled over." Record at 67. The article further indicated that the driver of the box truck was "freed from the wreckage by Peabody firefighters using the Jaws of Life extrication tool" and "was taken to Lynn Union, where he was treated for a broken left arm and a left leg injury." Record at 67.

15. On or about April 16, 2004, LINA again requested a copy of the autopsy and toxicology reports from the Chief Medical Examiner. Record at 138.

16. On or about May 5, 2004, Plaintiff provided LINA with a copy of the toxicology report. Record at 87-90. The toxicology report indicated that Decedent's ethanol level was 0.242 and that he tested positive for Benzodiazepine. Record at 89.

<u>After Completing Its Investigation, The Claim Administrator Denied
Plaintiff's Claim For Benefits And Informed Her Of Her Right To Appeal Its Decision</u>

17. On or about May 12, 2004, after completing its investigation into Plaintiff's claim for Accidental Death Benefits under the Plan, LINA determined that Decedent's death was not an accident because Decedent was highly intoxicated at the time of the collision and Plaintiff was not entitled to Accidental Death Benefits under the terms of the Accidental Death Plan. Record at 91-94.

4

18. In denying Plaintiff's claim for Accidental Death Benefits, LINA stated, "the hazards of drinking and driving are widely known and publicized. Therefore it is clearly foreseeable that driving while intoxicated may result in death or bodily harm. Any physical harm, including death, would have been considered a foreseeable consequence of his actions, and therefore would not have been an accident." Record at 93.

## THE ADMINISTRATIVE APPEAL PERIOD

<u>Plaintiff Appeals the Denial of her Claim for Accidental Death Benefits</u>

19. On or about May 20, 2004, Plaintiff appealed the denial of her claim for Accidental Death Benefits. Record at 95-101.

20. In her appeal, Plaintiff argued that she was entitled to benefits because there was no alcohol exclusion in the Plan. Record at 96.

21. Plaintiff further argued that a blood alcohol content of 0.242 was not significant for Decedent since he was an alcoholic and he "lived at an alcohol level of over the legal limit usually so a level of 0.24 was not high for him." Record at 97.

22. On May 26, 2004, LINA requested the Accident Reconstruction Report from the Peabody Police Department and was told it was not yet done. Record at 46.

23. On June 1, 2004, LINA again requested the Accident Reconstruction Report from the Peabody Police Department and was told it was not yet done. Record at 49.

24. On August 11, 2004, LINA requested the Accident Reconstruction Report from the Peabody Police Department and again was notified on August 18, 2004 that it was not done. Record at 50.

25. LINA finally received a copy of the Accident Reconstruction Report on September 8, 2004. Record at 58-66.

26. The report indicated that Decedent was traveling on Lake Street, swerving back and forth over the centerline, when he crossed over the centerline again, collided head-on with another vehicle, hit the curb and then rolled over. Decedent was then ejected from his vehicle. <u>Record</u> at 61, 64.

27. The report also stated, "[w]hile treating Mr. McGillivray on the scene, a strong odor of an alcoholic beverage was detected on and about his body. Upon surveying the Tahoe, a new brown paper bag with a bottle of Smirnoff's Tripe Distilled Vodka – with a fresh price mark of $12.99 was found behind the driver's seat. The bottle was only one-third full. . . It was also learned that Mr. McGillivray had been arrested by this dept. for OUIL this morning at 0115 hrs. . . His operator's License is status: Revoked." <u>Record</u> at 64.

28. With respect to the driver of the other vehicle, Francisco Umanzor, the report indicated that "[t]he Fire Department extricated him and he was found to have left side body injuries and was in shock." <u>Record</u> at 63.

29. On or about September 23, 2004, upon request from LINA, Plaintiff provided LINA with copies of the medical records from the detoxification unit that Decedent had checked into two days before the accident. <u>Record</u> at .

30. The detoxification medical records indicated that Plaintiff and Decedent had been separated for 4 years and that Decedent drank a pint of vodka a day. <u>Record</u> at 111. Decedent had had no significant abstinence in 25 years and had been to that detox unit over 24 times. <u>Record</u> at 111.

31. The detox records indicated that Plaintiff left around 10:20pm on January 14, 2004. <u>Record</u> at 114.

32. On or about November 17, 2004, LINA upheld their initial denial of Plaintiff's claim for Accidental Death benefits. LINA found that Decedent's death was not an accident because it was "clearly foreseeable that drinking and driving can cause death or bodily harm." LINA also found that Decedent's death was self inflicted. <u>Record</u> at 126-128.

    Respectfully submitted,

    The Defendant,

    LIFE INSURANCE COMPANY OF NORTH AMERICA,

    By its Counsel:

    <u>/s/David B. Crevier</u>
    David B. Crevier, BBO# 557242
    Katherine R. Parsons, BBO# 657280
    CREVIER & RYAN, LLP.
    1500 Main Street, Suite 2020
    Springfield, MA 01115-5727
    Tel: (413) 787-2400
    Facsimile: (413) 781-8235
    Email: dcrevier@crevierandryan.com
           kparsons@crevierandryan.com

<u>CERTIFICATE OF SERVICE</u>

    I certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on this 31st day of January, 2007.

    <u>/s/David B. Crevier</u>